**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| AOLLYWOOD, LLC,<br>　　*Plaintiff*,<br><br>　　　v.<br><br>FRANCISE JEAN-LOUIS,<br>　　*Defendant.* | No. 3:25-cv-1100 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Aollywood, LLC ("Plaintiff" or "Aollywood") has filed suit against Francise Jean-Louis

("Defendant" or "Ms. Jean-Louis") alleging three counts: (1) false association in violation of

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) common law mark

infringement; and (3) common law unfair competition. *See* Compl., ECF No. 1 ("Compl.").

Ms. Jean-Louis has moved to dismiss the Complaint under Federal Rules of Civil

Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Mot. to Dismiss, ECF No. 12 ("Mot.").

For the following reasons, the motion to dismiss is **GRANTED in part and DENIED in**

**part**.

Aollywood's claim seeking monetary damages under Section 43(a) of the Lanham Act,

15 U.S.C. § 1125(a), is **DISMISSED**, although its claims for injunctive relief remain.

To the extent that the deficiencies identified in this Ruling and Order can be remedied,

Aollywood must file an Amended Complaint by **May 1, 2026.**

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

  A.  **Factual Allegations**

   Aollywood is a limited liability company organized in Florida with its principal place of business in Port St. Lucie, Florida. Compl. ¶ 1. Ms. Jean-Louis is an individual domiciled in Bridgeport, Connecticut. *Id.* ¶ 2.

   Aollywood is engaged in advertising, marketing, entertainment, educational, and online retail store services, primarily focused on Haitian, Zambian, and Zimbabwean talent, art, and culture. *Id.* ¶ 6. Since at least January 1, 2017, Aollywood has allegedly continuously used the marks "Zollywood" and "Zoellywood" (the "Marks") in commerce. Specifically, Aollywood has allegedly used the Marks in Florida in connection with a range of goods and services, including advertising and marketing services for the entertainment industry; retail stores; online retail services; educational services in the entertainment field; a website featuring entertainment information; and the production of music, videos, television series, motion picture films, multimedia productions, and annual awards programs. *Id.* ¶ 7.

   Aollywood allegedly uses the Zollywood and Zoellywood marks to promote and showcase Haitian, Zambian, and Zimbabwean actors, movies, music, videos, shows, fashion, events, television series, talk shows, and entrepreneurs. *Id.* ¶ 8. Aollywood also allegedly created and promotes Zollywood Fest, an industry event hosted in Central Florida and Haiti that celebrates Haitian culture, art, and music. *Id.* ¶ 11. To promote its business, Aollywood allegedly owns and uses the websites and domains www.zollywood.app, www.zollywood.net, and www.zollywoodflix.com, the latter of which redirects users to www.zollywood.app. *Id.* ¶ 12. Aollywood allegedly also promotes its goods and services through social media platforms

including Facebook (@zollywoodmagazine), YouTube (@zollywood), and Instagram (@zollywoodmagazine). *Id.* ¶ 14.

Aollywood alleges that, as a result of its widespread, continuous, and exclusive use of its Marks, it owns valid common law rights in those marks. *Id.* ¶ 9. Aollywood has allegedly expended substantial time, money, and resources marketing, advertising, and promoting the goods and services sold and rendered under the Zollywood and Zoellywood marks. *Id.* ¶ 10.

Aollywood alleges that, after it acquired protective exclusive rights in the Marks, Ms. Jean-Louis began using a mark in commerce identical to the Plaintiff's "Zoellywood" mark (the "Infringing Mark"), and similar to the Plaintiff's "Zollywood" mark, without Aollywood's authorization. *Id.* ¶ 19. Aollywood alleges that Ms. Jean-Louis used the Infringing Mark on her Instagram account to promote services in the entertainment industry. *Id.* ¶¶ 21–22; *see also* Ex. 1, ECF No. 1-1. Aollywood alleges that Ms. Jean-Louis also used the Infringing Mark on Instagram to promote a screening of a film titled "Life of a Zoe" in Florida. *Id.* ¶ 22; Ex. 2, ECF No. 1-2. Ms. Jean-Louis's Instagram account allegedly identifies the account as "Your number one source for [Haitian flag] in the film industry." *Id.* ¶ 23. The Defendant's Instagram allegedly also uses the hashtag "#Zoellywood ® ™" which features a registered trademark symbol, although she allegedly does not hold a trademark registration for the mark. *Id.* ¶ 24.

In July 2021, Ms. Jean-Louis allegedly filed applications with the United States Patent and Trademark Office to register the marks "Zoellywood" (Serial No. 90835705) and "Zollywood" (Serial No. 90851133) in International Class 035 for business consulting and related services. *Id.* ¶ 25.

### B. Procedural History

On March 26, 2024, Aollywood filed suit in the Southern District of Florida against Ms. Jean-Louis for infringement and false designation of origin under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and related state common law claims. Mot. to Dismiss 4, ECF No. 12 ("Mot.").

On April 21, 2025, that court dismissed the Complaint without prejudice for lack of personal jurisdiction and venue. Mem. in Opp. 1, ECF No. 13 ("Mem. in Opp.").

On July 10, 2025, Aollywood filed a Complaint against Ms. Jean-Louis in this Court. Compl., ECF No. 1 ("Compl.").

On August 4, 2025, Ms. Jean-Louis filed a motion to dismiss the Plaintiff's Complaint. *See* Mot.

On August 21, 2025, Aollywood filed a memorandum in opposition to the motion to dismiss. *See* Mem. in Opp.

On September 26, 2025, Ms. Jean-Louis filed a reply to the Plaintiff's memorandum in opposition. Reply, ECF No. 27 ("Reply").

## II. STANDARD OF REVIEW

### A. 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing subject matter jurisdiction over the claims by a preponderance of the evidence. Id.

Under Federal Rule of Civil Procedure 12(b)(1), the facts alleged in the Complaint are viewed in the light most favorable to the plaintiff and all reasonable inferences must be drawn in

the plaintiff's favor. *Natural Resources Defense Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("When reviewing a district court's Rule 12(b)(1) determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo . . . Moreover the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." (internal quotations and citations omitted)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009).

## B. 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The plaintiff therefore must make a prima facie showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank*, SAL, 673 F.3d 50, 59 (2d Cir. 2012).

"The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.*; *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011), *as amended* (Sept. 23, 2011) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

5

The court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### C.  12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York*

*v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Ms. Jean-Louis seeks to dismiss Aollywood's Complaint for three reasons: (1) lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); (2) lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); and (3) failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

The Court discusses each issue in turn.

### A.  Subject Matter Jurisdiction

Subject matter jurisdiction concerns a district court's statutory or constitutional authority to adjudicate the dispute before it. *Makarova*, 201 F.3d at 113. A federal district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Aollywood has alleged that this Court has subject matter jurisdiction over its claims because it raises questions of federal

law under "28 U.S.C. § 1331, 28 U.S.C. § 1338, and under the doctrine of supplemental

jurisdiction over state claims arising from a common nucleus of operative facts." Compl. ¶ 4.

Ms. Jean-Louis argues that this Court lacks subject matter jurisdiction because

Aollywood's "bare citation of the Lanham Act without factual support fails to establish a valid

federal question." Mot. at 3.

Aollywood responds that because it has pled a violation of a federal statute, namely

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A), this Court has subject matter

jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the related state law

claims. Mem. in Opp. at 2.

Ms. Jean-Louis replies that the "Plaintiff has not established a valid basis for invoking the

Lanham Act" because its allegations are not supported by "credible evidence of actual use of the

claimed marks before [Ms. Jean-Louis's] [United States Patent and Trademark Office] filings."

Reply at 1.

The Court disagrees.

While "it is well settled that the failure to state a proper cause of action calls for a

judgment on the merits and not for a dismissal for want of jurisdiction . . . a suit may sometimes

be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal

statutes clearly appears to be immaterial and made solely for the purpose of obtaining

jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S.

678, 682–83 (1946); *see also The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)

("[W]hen the plaintiff bases his cause of action upon an act of Congress, jurisdiction cannot be

defeated by a plea denying the merits of the claim.").

8

An alleged claim is clearly "immaterial," "insubstantial," or "frivolous" if "the plaintiff was not really relying upon the [] law for his alleged rights," *The Fair*, 228 U.S. at 25, if "it is manifestly devoid of merit," *Hannis Distilling Co. v. City of Baltimore*, 216 U.S. 285, 288 (1910), if it is foreclosed by "previous decisions of [the] court," *id.*, or if there is "no room for the inference that the questions sought to be raised can be the subject of controversy," *id.* A claim is not frivolous or immaterial where it forms the "basis of the relief sought," *Bell v. Hood*, 327 U.S. at 683, or where the Plaintiff "wins under one construction of [the statute] and loses under another," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 83 (1998).

Aollywood's allegation that Ms. Jean-Louis violated the Lanham Act forms a substantial basis of the relief sought. Aollywood alleges that it has continuously used the "Zollywood" and "Zoellywood" marks in Florida since at least 2017, Compl. ¶ 7, and that Ms. Jean-Louis later began using identical marks without Aollywood's authorization, *id.* ¶ 19. Aollywood alleges that the Defendant's alleged use of the Plaintiff's Marks constitutes the use of a false designation of origin, misleading description and representation of fact, and unfair competition in violation of Section 43(a) of the Lanham Act, and alleges that the Defendant used the Marks in commerce, without the Plaintiff's authorization, and with the intent to "cause confusion, mistake, or deception as to the affiliation, connection, or association of [Ms. Jean-Louis] with [Aollywood]." Compl. ¶ 31-33. The remaining state law claims for common law mark infringement and unfair competition are similarly premised. *See id.* ¶ 36-47.

As a result, because Aollywood has sufficiently alleged that it is materially and substantially relying on the Lanham Act to assert its alleged rights, its contentions are not "so patently without merit as to justify . . . the court's dismissal for want [of] jurisdiction." *Bell v. Hood*, 327 U.S. at 683.

9

Accordingly, Ms. Jean-Louis's motion to dismiss is denied on these grounds.[1]

### B. Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic*, 334 F.3d at 206. Where parties have not engaged in discovery on the jurisdictional question, the plaintiff need only make a *prima facie* showing that jurisdiction exists. *Licci ex rel. Licci*, 673 F.3d at 59; *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("Where a 'court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.'") (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

Ms. Jean-Louis argues that Aollywood "asserts jurisdiction over [the] Defendant without showing minimum contacts" with the forum state, and that "isolated, unpaid promotion of cultural events does not constitute purposeful availment." Mot. at 3.

In response, Aollywood argues that it has pled this Court's general personal jurisdiction over Ms. Jean-Louis because she "is an individual domiciled in Bridgeport, Connecticut." Compl. ¶ 2; *see* Mem. in Opp. at 2-3; *see also* Mot. at 2. Aollywood argues that Ms. Jean-Louis previously stated in the Southern District of Florida that "[her] work promoting Haitian culture is primarily focused in New York and Connecticut." Deft.'s Mot. to Dismiss. in S.D. Fla 2-3, ECF No. 13-1.

---

[1] Although not pled by Aollywood, because Ms. Jean-Louis is a resident of Connecticut and Aollywood is incorporated in and has its principal place of business in Florida, the Court also has diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

In reply, Ms. Jean-Louis responds that "[r]esidency alone is insufficient" to establish personal jurisdiction under the Lanham Act "without showing standing and concrete injury." Reply at 1.

The Court disagrees.

Federal district courts have personal jurisdiction over those domiciled within the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021) (describing that a court has "general jurisdiction" over "'any and all claims' brought against a defendant . . . in her place of domicile") (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)); *cf. Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (to determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the court must first determine whether the defendant falls within the long-arm statute of the forum state, and then the court must determine whether its exercise of jurisdiction would comport with constitutional due process principles).

"General jurisdiction over an individual comports with due process in the forum where he is 'at home,' meaning the place of 'domicile.'" *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (quoting *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) (per curiam)). "One may have more than one residence in different parts of this country or the world, but a person may have only one domicile." *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004).

Ms. Jean-Louis has asserted that she "resides in Connecticut and New York." Mot. at 1. But her submissions to the Southern District of Florida state that she is a resident of Connecticut, although her work "promoting Haitian culture" is "primarily focused in New York and Connecticut." Deft.'s Mot. to Dismiss. in S.D. Fla 3, ECF No. 13-1. She also signed that

11

submission with a residential address located in Bridgeport, Connecticut. *Id.* at 4. Thus, Aollywood has made a prima facie showing that Ms. Jean-Louis is "at home" in Connecticut. This Court may therefore assert personal jurisdiction over her. *See Daimler*, 571 U.S. 117, 121-122 (discussing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)).

Accordingly, Ms. Jean-Louis's motion to dismiss is denied on these grounds.

### C. Standing

"[C]onstitutional standing is a jurisdictional prerequisite to suit." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126-27 (2d Cir. 2003), *as amended* (Apr. 16, 2003) (citing *Steel Co.*, 523 U.S. at 101). To establish Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Kearns v. Cuomo*, 981 F.3d 200, 207 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

"An injury in fact can be a physical injury, a monetary injury, an injury to one's property, or an injury to one's constitutional rights, to take just a few common examples." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Nonetheless, "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a right and purports to authorize a suit to vindicate it. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc.*, 578 U.S. at 331.

A cause of action under Section 1125(a)(1)(A), the Lanham Act, exists for "any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact" that:

> is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1)(A). Standing to assert a Section 43(a) claim is limited to a "purely commercial class of plaintiffs." *Berni v. International Gourmet Restaurants*, 838 F.2d 642, 648 (2d Cir. 1988). In the context of a false advertising claim under Section 43(a), the Second Circuit has elaborated that the plaintiff, who need not be a direct competitor of the defendant, must

> demonstrate a "reasonable interest to be protected" against the advertiser's false or misleading claims, and a "reasonable basis" for believing that this interest is likely to be damaged by the false or misleading advertising. The "reasonable basis" prong embodies a requirement that the plaintiff show both likely injury and a causal connection to the false advertising.

*PDK Labs, Inc. v. Friedlander,* 103 F.3d 1105, 1111 (2d Cir. 1997) (citing *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.,* 32 F.3d 690, 694 (2d Cir. 1994) (internal citations omitted)). Thus, to establish statutory standing under Section 43(a), a plaintiff must allege that they will suffer a commercial injury that is caused by the defendant's actions. *See Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085, 1096-97 (S.D.N.Y. 1999), *aff'd,* 203 F.3d 116 (2d Cir. 2000).

Although not raised independently, in arguing that Aollywood lacks personal jurisdiction, Ms. Jean-Louis also argues that the Plaintiff lacks "standing and concrete injury under the Lanham Act." Reply at 1. Ms. Jean-Louis argues that Aollywood has not shown "concrete injury." Ms. Jean-Louis has challenged the first requirement that the Plaintiff suffer an injury-in-fact. Reply at 1. Ms. Jean-Louis further argues that Aollywood lacks standing "under the Lanham Act." *Id.* Therefore, the Court will address the Plaintiff's constitutional and statutory standing to bring these claims.

The Court disagrees in part, and agrees in part with Ms. Jean-Louis.

Aollywood has alleged "injury . . . to its goodwill and reputation." Compl. ¶ 34. And "'reputational harms,' as a general matter, are classic Article III injuries." *Bost v. Illinois State*

*Bd. of Elections*, 146 S. Ct. 513, 520 (2026) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)). Thus, the Court is satisfied that Aollywood has pled a cognizable injury-in-fact to establish constitutional standing.

As to prudential or statutory standing, Aollywood pleads its Lanham Act claim under two theories: false designation of origin and misleading description and representation of fact under 15 U.S.C. § 1125(a)(1)(A).[2] The Second Circuit recognizes that the showing of injury or damage necessary to satisfy the statute and withstand a motion to dismiss depends on the relief sought. A plaintiff seeking injunctive relief must allege more than a "mere subjective belief" of injury, but actual evidence of monetary loss is not necessary. *Johnson & Johnson v. Carter-Wallace, Inc.,* 631 F.2d 186, 189 (2d Cir. 1980)("[A] plaintiff seeking an injunction, as opposed to money damages, need not quantify the losses actually borne.").

Monetary relief, on the other hand, requires "more proof," such as evidence of a "definite amount of sales lost" or "actual sales diversion." *Id.* at 190-191. Here, Aollywood seeks "preliminary and permanent injunctive relief, compensatory damages, treble damages, attorney's fees, [and] costs[.]" Compl. ¶ 35. Aollywood has alleged sufficient "potential for a commercial or competitive injury" to establish statutory standing for the injunctive relief sought. *Berni,* 838 F.2d at 648. For example, Aollywood alleges that Ms. Jean-Louis's actions are "likely to deceive consumers as to the origin . . . of Defendant's services" and "likely to cause confusion . . . of Defendant with Plaintiff." Compl. ¶ 30, 32. Aollywood also alleges that the "Defendant's acts

---

[2] Although Aollywood alleges that "this is an action for false designation of origin under Section 43 of [the] Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and the supplemental state causes of action of Florida common law trademark infringement and unfair competition," Compl. ¶ 3, in Count One, Aollywood alleges that "[the] Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein [also] constitutes . . . misleading description and representation of fact," *id.* ¶ 31. Thus, the Court understands Count One to allege a violation of the Lanham Act under both theories.

are willful with the deliberate intent to . . . divert potential sales of Plaintiff's goods and services to the Defendant." *Id.* ¶ 26.

But Aollywood also seeks to recover compensatory damages, alleges that Ms. Jean-Louis acted with the "deliberate intent to . . . divert potential sales of Plaintiff's goods and services," *id.* ¶ 26, and has not alleged actual diversion or loss of sales. Aollywood thus has not alleged the "more proof" necessary to maintain its damages claim. *See Johnson & Johnson*, 631 F.2d at 190 (distinguishing a damages claim, from injunctive relief, because it "would require more proof").

Accordingly, Ms. Jean-Louis's motion is granted in part and denied in part, as to its Lanham Act claim, allowing its claim for injunctive relief to go forward, but dismissing its claim for monetary relief, without prejudice to renewal.

### D.  The Various Claims

Ms. Jean-Louis argues that Aollywood has failed to state a claim for false association, trademark infringement, and unfair competition, the latter two being the Florida common law claims.

Aollywood responds that it has pled facts to support all counts.

The Court discusses the federal and Florida common law claims in turn.

#### 1.  The Lanham Act Claim

Section 43(a) of the Lanham Act provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his

> or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). To be clear, Count One of the Plaintiff's Complaint alleges only one base of liability, namely false association, albeit under two theories of liability, false designation of origin and misleading description and representation of fact.[3] *See* Compl. ¶ 3, 29-35.

In order to prevail on a claim of false association under 15 U.S.C. § 1125(a)(1)(A), a plaintiff must establish (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent. *1–800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (cleaned up). The plaintiff must also show that the defendant's use of that mark "is likely to cause confusion . . . as to the affiliation, connection, or association of [the defendant] with [the plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [the plaintiff.]" 15 U.S.C. § 1125(a)(1)(A).

---

[3] *See supra* Section III.C. at footnote 2.

Ms. Jean-Louis argues that the Plaintiff's exhibits are "largely fabricated or compiled after the fact" and there is "no commercial harm to [the] Plaintiff shown prior to [the] Defendant's trademark application in 2021." Mot. at 4.

In response, Aollywood argues that registration of a trademark is not necessary to a claim for false designation of origin under 15 U.S.C. §1125(a)(1)(A); rather, Aollywood need only plead ownership of valid trademarks. Mem. in Opp. at 4-5. Aollywood argues that it has pled the required elements for a Lanham Act claim, namely that Ms. Jean-Louis has used the Zoellywood mark in commerce and in connection with the sale or advertising of goods or services, and that her actions have created a likelihood of confusion. *Id.* at 5-6.

In reply, Ms. Jean-Louis argues that Aollywood has not pled likelihood of confusion. Reply at 2. She argues that "any confusion stems from [the] Plaintiff's own conduct in attempting to create websites and accounts after [she] filed [her] USPTO applications." *Id.* In short, Ms. Jean-Louis argues that Aollywood's false association claim fails because it has shown neither commercial harm nor a likelihood of confusion.

The Court disagrees.

Whether Aollywood has suffered commercial harm does not go to the merits of Aollywood's false association claim, but rather to the issue of standing, which the Court has already addressed and resolved. Thus, the relevant inquiry is whether Aollywood has sufficiently alleged a likelihood of confusion, and it has.

To determine likelihood of confusion, the Second Circuit applies the eight factors articulated in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961). Those factors are: "1) the strength of the plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that plaintiff will 'bridge

17

the gap' and offer a product like defendant's; 5) actual confusion between products; 6) good faith on the defendant's part; 7) the quality of defendant's product; and 8) the sophistication of buyers." *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234 (2d Cir. 2024).

Many of these factors weigh in favor of the likelihood of confusion: Aollywood and Ms. Jean-Louis's marks are nearly identical; the parties' goods and services, which pertain to Haitian entertainment and culture, are substantially similar; and both parties market their goods and services in Florida. *See generally* Compl. Even a sophisticated buyer would likely have difficulty distinguishing between the parties' respective Instagram accounts, which are not only similarly named but also feature substantially similar content. *See, e.g., 1-800 Contacts, Inc. v. JAND, Inc.*, 608 F. Supp. 3d 148, 154–55 (S.D.N.Y. 2022) (finding the similarity-of-the-marks factor to be dispositive in finding likelihood of confusion).

As a result, Aollywood has pleaded sufficient facts to support a likelihood of confusion to withstand Ms. Jean-Louis's motion to dismiss.

Accordingly, Ms. Jean-Louis's motion to dismiss is denied on these grounds.

### 2.   The State Common Law Claims

"The legal standard for federal trademark and unfair competition, and for common law trademark infringement, are essentially the same." *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1239, 1250 (S.D. Fla. 2002), *modified,* 206 F. Supp. 2d 1270 (S.D. Fla. 2002) (citing *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.,* 889 F.2d 1018, 1023 (11th Cir. 1989)). To prevail on a common law trademark infringement claim, the plaintiff must show that it has trademark rights to the mark or the name at issue is distinctive enough to deserve protection, and the defendant's use of the mark is likely to cause consumer confusion as to the proper origin of the services offered. *Freedom Sav. & Loan Assn. v. Way,* 757 F.2d 1176, 1179 (11th Cir. 1985).

And an unfair competition claim under Florida common law requires Aollywood to show "deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion." *Monsanto Co.*, 206 F. Supp. 2d at 1250 (citing *Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986)).

As to the trademark infringement claim, Ms. Jean-Louis argues that Aollywood lacks a registered trademark over the marks, it provides no reliable evidence of first use, she filed her trademark application "in good faith and prior to [the] Plaintiff's application," and Aollywood provides no evidence of consumer confusion, deception, or damages. Mot. at 3. As to the unfair competition claim, Ms. Jean-Louis argues that there are no facts indicating that she misappropriated any protected material or engaged in deceptive practices. *Id.* at 4. She also argues that cultural posts and digital media are non-commercial and therefore do not constitute unfair competition. *Id.*

In response, Aollywood argues that because the Florida state law claims for common law infringement and unfair competition are analyzed similarly to the Lanham Act, and because the likelihood of confusion element is the "determining factor," Aollywood argues it has stated a claim for the state law counts. Mem. in Opp. at 7.

In reply, Ms. Jean-Louis argues that Aollywood has not pled likelihood of confusion because any such confusion stems from the Plaintiff's conduct and not her own. Reply at 2.

The Court disagrees.

As discussed with the Lanham Act claim, Aollywood has sufficiently pled the "likelihood of confusion" element in both the state law claims. Ms. Jean-Louis's remaining arguments concerning the trademark infringement claim are that Aollywood lacks a registered trademark

19

over the marks, Aollywood has not shown evidence of first use, and Ms. Jean-Louis applied for trademark registration in good faith. Mot. at 3. But all of these arguments fall short.

First, Aollywood need not possess official trademark rights to a mark in order to assert common law trademark infringement. *See Tally-Ho, Inc.*, 889 F.2d at 1023-24 ("[A] registered mark has prima facie validity but is subject to another's bona fide use of the same or similar mark under the common law . . . Common law owners of unregistered marks are limited to common law remedies in infringement actions.").

Second, Aollywood has alleged first use because it has alleged continuous use of the Marks since 2017, and Ms. Jean-Louis only filed her application for trademark registration in 2021. Compl. ¶ 7, 25; *see Inmuno Vital, Inc. v. Golden Sun, Inc.*, 49 F. Supp. 2d 1344, 1350 (S.D. Fla. 1997) ("[T]o prevail on its [common law trademark infringement claim], Golden Sun must have obtained trade rights in the mark prior to Inmuno Vital's first use.") (citing *Coach House Restaurant, Inc. v. Coach and Six Restaurants, Inc.,* 934 F.2d 1551, 1559 (11th Cir.1991)). And finally, the Court is not aware of any reason why Ms. Jean-Louis's good-faith application for trademark registration is material to the Plaintiff's trademark infringement claim. Perhaps Ms. Jean-Louis is asserting an affirmative defense of fair use, though she provides no further support for such a defense.

As to the common law unfair competition claim, "[t]he Florida common law of unfair competition is an umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007) (internal citation and quotation marks omitted); *see also id.* (explaining that the Florida common law unfair competition claim is not limited to "palming off" or "reverse palming off" but can

include business interference and misrepresentation (citing *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.,* 432 F.Supp.2d 1319, 1353 (S.D.Fla.2006))). Thus, a plaintiff asserting a common law unfair competition claim must allege deceptive conduct on the part of the defendant. "Liberally construed," the "deceptive or fraudulent conduct" element of unfair competition "typically . . . tend[s] to involve confusion resulting from similarity in trade names." *Al Rushaid Petroleum Inv. Co. v. Siemens Energy Inc.*, 159 F.4th 887, 899 (11th Cir. 2025) (citing *Sun Coast, Inc. v. Shupe*, 52 So. 2d 805, 805–06 (Fla. 1951)).

Aollywood alleges that Ms. Jean-Louis deliberately and willfully used the Marks to "identify the same, or related, goods and services[.]" Compl. ¶ 46. Thus, Aollywood sufficiently alleges deceptive conduct as part of its common law unfair competition claim. *See also Noveshen v. Bridgewater Assocs., LP*, 47 F. Supp. 3d 1367, 1377 (S.D. Fla. 2014) (describing that under the Florida Deceptive and Unfair Trade Practices Act, "[a] deceptive act or unfair practice may be found when there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.").

Accordingly, Ms. Jean-Louis's motion to dismiss is denied on these grounds.

## IV.    CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is **GRANTED in part and DENIED in part**.

Aollywood's claim seeking monetary damages under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is **DISMISSED**, although its claims for injunctive relief remain.

To the extent that the deficiencies identified in this Ruling and Order can be remedied, Aollywood must file an Amended Complaint by **May 1, 2026.**

**SO ORDERED** at New Haven, Connecticut, this 30th day of March, 2026.

21

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE